## METROPOLITAN LIFE INSURANCE CO v BOSONOS

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 14, 1933

Barnum, Hammond, Stephens & Hoyt, Youngstown, for plaintiff in error.

Morgan, Cailor & Cunningham, Youngstown, for defendant in error.

POLLOCK, J.

The defendant in the court below in its answer, so far as we need refer to it now, set out the questions which the insured in his application answered, and alleges that these answers were false, and that relying upon the answers thereto being truthful the policy was issued, otherwise it would not have issued the policy. It is perhaps not now claimed by the defendant in error that the answers to all of these questions were truthfully made, but it is claimed that in order to avoid the liability under this policy there must be something more shown than simply that the answers to the questions in the application were not true. Our attention is called to the fact that there is a difference in the rule that should be applied in determining this question in this case than should be applied in a case where the policy does not take effect unless the insured is in sound health at that time, and we concur in that claim.

This policy is controlled and the answers are to be determined whether they are fatal to the policy or not from the provisions of §9391 GC:

"No answer to any interrogatory made by an applicant in his or her application for a policy, shall bar the right to recover upon any policy issued thereon, or be based in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is wilfully false, was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued."

So that in order to set aside, or rather that the defendant can prevail in this cause, it must be proven that these answers were fraudulently made and that only for the making of these answers as they were this policy would not have been issued. Now, the answers that are claimed to have been fraudulent are, commencing with number six:

"Q. Present condition of health?
A. Good.
Question 7: When last sick?
Answer: Never.
Question: Nature of last sickness?
Answer: None.
Question 11: Have you had any surgical operation, serious illness or accident?
Answer: No.
Question 16: Name and address of your usual medical attendant?
Answer: None.
Question 17: Have you ever had any of the following complaints or diseases: Cancer, consumption, habitual cough, disease of the lungs?
Answer: No.
Question 18: Have you been attended by a physician during the last five years? If yes, give name of complaints, dates, how long sick and names of physicians?
Answer: No.
Question 19: Have you had any treatment within the last five years at any dispensary or hospital? If yes, give dates, duration, name of ailment and name of institution?
Answer: No."

The Insurance Company claims that these answers are not only untrue but that they were fraudulently made in order to secure this policy. It appears that the insured was a man engaged in some physical labor prior to the time of insurance, and there is no evidence in this case that he had had any serious sickness until January of 1929. Dr. Colbert, a physician of this city, was called on the 6th of January that year. He was suffering with sore throat of some kind. This doctor treated him until possibly the 20th of January, when he went, at the direction of this physician, to Dr. Baird, who is a specialist in throat diseases. He treated him for some time, until the 29th of January. Dr. Baird diagnosed the insured's trouble in his throat possibly a growth or enlargement some place in the throat. The insured was then sent, at the direction of Dr. Colbert, to Dr. Guerinost of Pittsburgh, and went to St. John's Hospital. He was there for seven days. While this doctor did not testify, yet evidently he diagnosed the insured's trouble as tuberculosis of the larynx, or possibly further

down. He returned home and was sent by Dr. Colbert to Dr. Kirkwood, who specializes in tuberculosis. Dr. Kirkwood testifies that he diagnosed his trouble as tuberculosis of the larynx, pulmonary tuberculosis, and his treatment of this man ended possibly on the 2nd of May, 1929.

There can be no doubt but what these answers were not truthful, but the claim, as we have stated, is that they were not fraudulently made. It is urged that this man was not told that he was suffering from tuberculosis, and from this evidence we are not able to say that he was told what his trouble was, or at least what his serious trouble was, but he must have known from the different doctors to whom he was sent and the treatment he received that he had some serious trouble, if he did not know exactly what his trouble was. He in his answers denies that he was treated by these doctors, or by any doctors, rather, during the time inquired about, but he could not help but know that he had been treated, as testified here, by the doctors. Possibly if that was all that would follow from the fact that he had been treated by doctors, it could not be said that it was so material that it would set aside the verdict, or rather avoid this insurance, but it is evident and testified to by a representative of this insurance company that an insurance company would not have insured this man's life if it had known that he had been treated by doctors so recently, without inquiring as to the cause of the treatment, and upon learning that insured was suffering from tuberculosis would have refused the insurance. The insured could not but remember and could not help but know when he was denying that he had been treated by doctors that it was not true, and that it was fraudulent to make such representations.

It is claimed that the insurance company knew that these answers were false, and the latter part of this same section says:

"And also that the agent or company had no knowledge of the falsity or fraud of such answer."

Our attention is called to the special interrogatory answered by the jury in regard to his treatment, and our attention is especially called to the answer to the interrogatory as to whether the company knew or not, and the answer is "yes," and the further question as to how and who knew, and the answer is "The agent." We have gone through this record as carefully as a record can be gone through, and we can not find any evidence that tends to show or prove in any way that the company or any of its agents knew that these answers were not true, except our attention is called to the fact that the company charged more than the ordinary or usual premium for this policy. That is all there is said in this record. There is an answer in the application that he had sore throat. Whether that was the cause of charging greater premium or not we do not know, but the mere fact that the company increased the premium did not tend to prove, as we think, that the company or its agents knew that these answers were false or that the company had information that this man had been attended by a physician, so that we think the company can not be charged with knowledge that the answers were false.

There is further error complained of and that is that the court refused to give certain charges before argument, requested by defendant below, and there were six refused. We do not think after arriving at the conclusion that we have that we need spend any special time in discussing these charges. It may be said that some of these charges are made to apply to what is denominated in the brief as a good health policy. If the evidence as to this man's knowledge had been such that this case should have gone to the jury there are some of these charges that the court thinks it would be error to give, but the case is reversed on the other ground stated and final judgment entered in behalf of the plaintiff in error.

FARR and ROBERTS, JJ, concur in the judgment.